[No. 23487. Department One. November 5, 1931.]

THE STATE OF WASHINGTON, *on the Relation of* LLOYD TRESEDER, *Plaintiff,* v. F. G. REMANN, *Judge of the Superior Court for Pierce County, Respondent.*[1]

[1]Reported in 4 P. (2d) 866.

*Paul Carrigan* and *Donald Baer,* for relator.

*Bertil E. Johnson* and *H. B. Gardner,* for respondent.

BEELER, J.—This matter comes before this court at the instance of Lloyd Treseder, seeking a reversal of an order of the superior court for Pierce county discharging a writ of habeas corpus and remanding the plaintiff, Lloyd Treseder, to the custody of two extradition agents of the state of California. The plaintiff is a prisoner in the Pierce county jail, this state, and the two extradition agents are awaiting the outcome of this proceeding, anxious to return with him to that state.

From the record before us, it appears that the governor of the state of California has heretofore issued and forwarded to the governor of this state a requisition for the extradition of the plaintiff, on the ground that he is a fugitive from justice from that state. The requisition is not in evidence, but the parties have stipulated that it provides in part:

"Whereas, it appears by the *application* for requisition and copies of the complaint, warrant, information, judgment, sentence, and commitment to the state penitentiary at San Quentin, California, which I

*certify are authentic and duly authenticated in accordance with the laws of California."* (Italics ours.)

It appears from the documents enumerated in the stipulation, all of which accompanied the requisition, that, on August 25, 1927, in the police court of the city and county of San Francisco, California, the plaintiff was charged by *complaint* with the crime of burglary in the second degree; that thereafter he was bound over to the superior court of that state, and on August 29, 1927, was charged by information with the crime of second degree burglary in that court; and on the 6th day of October, 1927, was duly convicted and sentenced to serve a term of imprisonment in the state penitentiary at San Quentin, California.

In addition to the documents enumerated in the above quoted stipulation, three additional documents were also annexed to the requisition:

(1) A certificate executed by the clerk of the state board of prison directors of California, stationed at the prison at San Quentin, certifying that, at a meeting of the board of prison directors held on January 19, 1929, it was determined that Treseder "shall be confined in the state prison seven years from and after the date on which he was received by said warden." (October 10, 1927.)

(2) An affidavit by James B. Holohan, warden of the California state prison at San Quentin, in which he avers that Treseder was received at the prison on October 10, 1927, to serve a sentence of seven years, as fixed by order of the prison board, for the crime of burglary in the second degree, and that, while assigned to labor in one of the highway camps in the state of California, he escaped, on May 18, 1929, from the guards in charge of a group of prisoners.

(3) An application by James B. Holohan, the warden, addressed to the governor of the state of Cal-

ifornia, requesting that he make formal demand on the governor of this state for the extradition of the fugitive. This application, among other things, states:

"In support of this application, I hereby attach certified copy of the COMPLAINT sworn to before a magistrate charging said fugitive with the crime of burglary, second degree; a certified copy of the INFORMATION filed in the superior court of the state of California in and for the city and county of. San Francisco; certified copy of JUDGMENT—COMMITMENT issued thereon on the 6th day of October, 1927; and an AFFIDAVIT by me as warden of said California state prison showing that said Lloyd Treseder had escaped from custody during the term of his imprisonment and is now a fugitive from justice."

Subsequent to May 18, 1929, the date on which Treseder is alleged to have escaped, he was convicted of an offense against the United States government and was sentenced to serve a term of imprisonment in the United States penitentiary at McNeil's island. He was discharged from that penal institution on September 9, 1931, and on that day was taken into custody by the sheriff of Pierce county on a criminal warrant based upon a complaint, properly sworn to, charging him with being a fugitive from justice from the state of California.

On September 15, the plaintiff caused a writ of habeas corpus to be issued in the superior court for Pierce county, which was made returnable in that court September 17, 1931. But before the return day, the governor of this state, on September 16, 1931, in obedience to the demand of the governor of the demanding state, issued an extradition warrant for the arrest of the plaintiff as a fugitive from justice.

The defendant, in his return to the writ of habeas corpus, set up that the plaintiff was held in custody

by the extradition agents of the state of California under a warrant of extradition issued by the governor of this state in accordance with the laws and constitution of the United States and of the states of California and Washington.

The plaintiff in his reply denied that the extradition agents were accredited agents of the state of California, and alleged that the requisition for extradition issued by the governor of California, together with the extradition warrant issued by the governor of this state, were void, and hence the extradition proceedings were of no effect. Upon these issues the matter came on for hearing before the superior court for Pierce county. That court sustained the extradition proceedings, dismissed the writ of habeas corpus, and remanded the plaintiff to the custody of the extradition agents.

The sole question to be determined is whether the requisition issued by the governor of the demanding state and the documents thereunto attached and certified to by him were properly authenticated; and whether those documents or pleadings, as well as the extradition warrant issued by the governor of this state, which necessarily rests upon the proceedings of the foreign state, are valid.

Section 2, Article IV, of the United States constitution, provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

Section 5278 of the United States Revised Statutes, enacted by Congress in 1793, prescribes the procedure necessary to put into effect the power conferred by the

constitution, relating to extradition proceedings. It reads:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory. to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."

This court, in the case of *Thorp v. Metzger,* 77 Wash. 62, 137 Pac. 330, in passing upon the necessary essentials in order to justify the executive of this state to return a fugitive from justice to the demanding state, said:

"By this constitutional provision and Congressional enactment, three things are necessary in order to authorize the executive of one state to order the return of a fugitive from justice to the state in which the crime was committed: First, the accused must be demanded as a fugitive from justice by the executive of the state from which he fled; second, the demand must be accompanied by a copy of the indictment, or an affidavit made before a magistrate charging the fugitive with having committed a crime in the demanding state;

and third, a copy of the indictment or affidavit must be certified to by the executive of the demanding state.''

These prerequisites were all complied with in the proceedings here under consideration.

First, the governor of California has made a formal demand on the governor of this state for the return of the alleged fugitive.

Second, the prisoner was originally charged by a criminal complaint in the police court of the city and county of San Francisco, California, with the crime of burglary in the second degree. This complaint was sworn to and verified by a judge of that court, as required by the laws of California, on August 25, 1927. This document alone is sufficient to support these extradition proceedings. But, in addition, we have the affidavit of the warden of the California state prison made in support of his application to the governor of that state. From his affidavit, it is made to appear that Treseder was received at the prison October 10, 1927, and that, pursuant to the order fixing sentence, he was required to serve a term of seven years, but that, on May 18, 1929, and before his sentence expired, he escaped. The extradition warrant issued by the executive of this state recites that the same was issued in obedience to a demand made by the governor of California,

'' . . . accompanied by affidavits, complaint, information, . . . and warrant whereby the said Lloyd Treseder is charged with the said crime and being a fugitive from the justice of said state and having taken refuge in the state of Washington, which are certified by said governor of California to be duly authenticated.''

This reference to ''affidavits'' can refer to none other than that of the warden which was attached to his application.

Third, the governor of the demanding state certified these documents as being authenticated documents in accordance with the laws of that state, as shown by the stipulation heretofore noted.

The supreme court of Missouri, in the case of *Albright v. Clinger,* 290 Mo. 83, 234 S. W. 57, had before it an extradition proceeding in many respects similar to the one now before us. There the relator was sentenced and imprisoned in the state penitentiary of Ohio. Later, he was paroled. He violated his parole by departing from the state of Ohio. Later, he was convicted of grand larceny in the state of Missouri and sentenced to imprisonment in the state penitentiary of that state, and, on the expiration of his sentence, was taken into custody by an agent of the state of Ohio on an extradition warrant. The warden of the Ohio penitentiary by application requested the governor of Ohio to issue a requisition for extradition on the governor of Missouri. The governor of Ohio incorporated an affidavit of the warden setting forth the facts as heretofore detailed. It was contended that the affidavit of the warden had not been properly authenticated. The court, in passing on the question, said:

"It is contended that the sworn statement of the warden of the Ohio penitentiary made to the Governor of that State, in regard to the crime, conviction and flight of relator and incorporated in the application for a requisition for his return was not authenticated as required by the Federal statutes. (3 Fed. Stat. Ann. Sec. 905, p. 212, Sec. 907, p. 220.) [U. S. Comp. St. §§ 1519, 1521.] This contention is based on a misinterpretation of the meaning and purpose of these statutes. They refer, when properly construed, to the authentication, for evidentiary purposes, of legislative and judicial records and proceedings and of records kept in offices not pertaining to courts. Papers incorporated in the application at bar which came within

the purview of these statutes were authenticated as therein required. The warden's statement belonged to none of these classes; and it was sufficiently authenticated by the certification of the Governor of Ohio as being 'authentic and as having been duly authenticated in accordance with the laws of that state.' (Section 5278, p. 285, 3 Fed. Stat. Ann.) [U. S. Comp. St. § 10126.] The United States Supreme Court in construing Section 5278, *supra,* has held that in the certification by the demanding Governor of the authenticity of the indictment or other formal charge, that the person named is a fugitive from justice, embodies the essentials necessary to call for action on the part of the Governor of the asylum state. (*Ex parte Reggel,* 114 U. S. 642.) [5 Sup. Ct. 1148, 29 L. Ed. 250.] A conclusion flowing from the rule as thus announced is that the demanding Governor is the only proper person to determine the authenticity of papers incorporated in an application for a requisition. While his certification does not make the charge a crime, it authenticates that which does make it so and for this purpose it is conclusive. *(Kurtz v. State,* 22 Fla. 36.) [1 Am. St. Rep. 173.]''

The rule announced in the *Albright* case, *supra,* is sound and especially applicable to the facts now before us. When the governor of California authenticated the documents, including the affidavit of warden Holohan which accompanied the requisition, he was satisfied with their authenticity. This satisfies the statute, in the absence of any showing that the documents were fabricated or spurious.

■ But learned counsel for the plaintiff earnestly contends that the extradition proceedings cannot be bottomed upon the criminal complaint filed in the police court of the city and county of San Francisco, for the reason that, when the plaintiff was bound over to the superior court, he was charged by an information filed in that court, and as a result that complaint became *functus officio.* The argument is that the complaint,

having served its purpose, is no longer an existing document.

The argument is ingenious but not convincing. A person is "charged" with crime after his conviction as well as before. In the case of *In re Hope,* 10 N. Y. Supp. 28, it appears that the governor of Delaware had issued a requisition upon the governor of the state of New York for the return to the former state of prisoner Hope. It was there said:

"The papers accompanying the requisition consist of a copy of an indictment against Hope for burglary, and a record of conviction thereunder in Delaware, showing his sentence for 10 years, and *proof by affidavit* that he escaped from jail with over 9 years of such sentence unserved. His return to that state is demanded for the purpose of compelling him to serve out the remainder of his unexpired sentence. The requisition was honored by me *pro forma,* and the prisoner arrested, and now, after a full hearing has been had, the question arises whether the warrant should not be revoked. Mr. Charles W. Brooke, the prisoner's counsel, insists that the requisition should be revoked, upon the ground that there is *no authority under the constitution and the laws for the extradition of an escaped convicted prisoner.* He argues that a person can only be returned to another state to answer a charge made against him upon which no conviction has yet been had. The broad ground is taken that there is no legal remedy whatever provided to secure his return where a convicted felon escapes from one state into another. If this be true, it is new doctrine, indeed, and discloses a lamentable defect in our criminal laws. The constitutional provision relating to interstate extradition (article 4, § 2, subd. 2), declares that 'a person charged in any state with treason, felony, or other crime, who shall flee from justice 'and be found in another state, shall . . . be delivered up, to be removed to the state having jurisdiction of the crime.' It is seriously urged that a person cannot be deemed to be 'charged' with a crime when he has already been convicted for such crime. It seems to be claimed that

the 'charge' no longer exists because it is deemed merged in the conviction. It is also urged that the law-writers have laid it down in the books that the declared object of an extradition is the removal of the person charged with the crime for the purpose of his being subsequently tried upon the charge presented against him, and that extradition cannot be invoked for any other purpose. This is ordinarily so, and correctly states the general rule. These expressions to be found in the books, however, have reference, not to exceptional instances, but to the usual class of cases where offenders have fled from one state to another prior to apprehension or conviction. Such flights are common, while escapes after conviction are rare. It is clear that in enunciating a general proposition there was no intention of excluding or exempting convicted escaped persons from liability to extradition. No narrow or strained construction should be placed upon the word 'charged,' as used in the constitution in the federal statute. It is broad enough to include all classes of persons duly accused of crime. A person can be said to be 'charged' with crime as well after his conviction as before. The conviction simply establishes the charge conclusively. An unsatisfied judgment of conviction still constitutes a 'charge' within the true intent and meaning of the constitution. An indictment or affidavit merely presents the charge, while a conviction proves it. To warrant extradition the statute requires an indictment or affidavit charging a crime, but if, in addition thereto, there is also presented a record of conviction, the case is not weakened but rather strengthened. The public purpose to be effected by extradition must be taken into consideration in determining the question. Its object is to prevent the successful escape of all persons accused of crime, whether convicted or unconvicted, and to secure their return to the state from whence they fled, for the purpose of punishment. It is invoked to aid the administration of criminal justice, and to more certainly insure the punishment of the guilty. The construction contended for by the prisoner's counsel would defeat the ends of justice in many instances,

and it is conceded that there is no express decision favoring it. It has been usual to grant extradition in similar cases. The *Case of Carter* (decided by me on July 10, 1885) was just such a case, although this precise point was not then raised. In *Dolan's Case,* 101 Mass. 219, and in *Hollon v. Hopkins,* 21 Kan. 638, the prisoners were returned by extradition to other states to serve out unexpired sentences, and no such question seems to have been raised as to the legality of the proceedings. This first point raised by the prisoner's counsel seems altogether too technical, and I am constrained to overrule it." (Italics ours.)

See, also, *Drinkall v. Spiegel,* 68 Conn. 441, 36 Atl. 831, 36 L. R. A. 486; *Hughes v. Pflanz,* 138 Fed. 980.

■ The plaintiff next contends that there is no proof showing that the alleged fugitive had not fully served his sentence. There are two answers to this contention: First, the affidavit of the warden shows that Treseder escaped before he had completed his sentence; and second, the plaintiff offered no proof at the hearing on the writ of habeas corpus that he had been paroled or discharged at any time prior to the expiration of his sentence. The burden rested upon him at that hearing to prove that he was not a fugitive from justice. This he failed to do.

"It is well settled that the presence of the accused in another state is sufficient, if unexplained and uncontradicted, to warrant his return to the demanding state upon formal and regular requisition, and it is incumbent upon the petitioner for habeas corpus, seeking to defeat extradition, to establish that he is not a fugitive from justice." *Ex parte Baker,* 33 Okla. Cr. 413, 244 Pac. 459.

See, also, *State ex rel. Arnold v. Justus,* 84 Minn. 237, 87 N. W. 770, 55 L. R. A. 325; *Albright v. Clinger, supra.*

■ And finally, the plaintiff contends that the extradition proceedings are void because, when the plain-

tiff was bound over from the municipal court of the city and county of San Francisco to the superior court of California, he was charged by an information which was unverified. An information filed in the superior court, under the penal code of California, § 809, need not be verified. See, also, *United States v. Collins*, 79 Fed. 65. However, the information as well as the complaint, judgment and state prison commitment are before us as an exemplification of record certified to by the presiding judge of the superior court of San Francisco county, California.

Furthermore, all pleadings and documents were properly authenticated by the chief executive of the demanding state, with the possible exception of the certificate of the state board of prison directors, which document in any event is mere surplusage.

The plaintiff has not called to our attention wherein the pleadings or documents which accompanied the requisition, and which were certified to by the chief executive of the demanding state, were not properly authenticated as required by the laws of that state. In the absence of such showing, we shall presume that the documents of the foreign state, authenticated by the governor, are genuine. For an exhaustive and scholarly review of the authorities on that point, see *People ex rel. MacSherry v. Enright*, 184 N. Y. Supp. 248. That court, in part, said:

"The constitutional provision regarding extradition from one state to another was adopted to promote justice, to aid the states in enforcing their laws, and not to shield malefactors. The supreme court of the United States has emphatically announced its adherence to the doctrine that a faithful and vigorous enforcement of the provisions relating to fugitives from justice is vital to the harmony and welfare of the state, and that, while a state should take care that the rights

of its people are protected against illegal action, both it and the judicial authorities throughout the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted, as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state. The action of the governor in issuing his warrant should not be nullified by the courts, unless it conclusively appears that the accused is not a fugitive from justice and that the issuance of the warrant was in plain contravention of law.''

See, also, *People v. Stockwell,* 135 Mich. 341, 97 N. W. 765; *In re Hooper,* 52 Wis. 699, 58 N. W. 741; Moore on Extradition, vol. 2, sec. 551.

The writ of habeas corpus is dismissed, and the prisoner, the plaintiff here, is remanded to the custody of the extradition agents of the state of California.

It is so ordered.

TOLMAN, C. J., MITCHELL, PARKER, and HERMAN, JJ., concur.