GULLEY, SHERIFF, v. APPLE.

4-8509                                      210 S. W. 2d 514

Opinion delivered April 19, 1948.

*Guy E. Williams,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellant.

*Sam Robinson,* for appellee.

MINOR W. MILLWEE, Justice. This appeal involves the constitutionality of Act 172 of 1937 (§§ 5400-5402, Pope's Digest), known as the Uniform Act for Out-of-State Parolee Supervision.

Appellee was sentenced to four years imprisonment in the Missouri State Penitentiary by the circuit court of

Carter county, Missouri, on April 23, 1945. On March 11, 1947, the Missouri Board of Probation and Parole granted appellee's application for parole and permission to return to his mother's home in North Little Rock, Arkansas. The parole agreement and order of the board issued thereon provided that said parole might be revoked by the board without notice, and that if appellee should be arrested in another state during the parole period, he would waive extradition and not resist being returned to the State of Missouri. On August 20, 1947, the Missouri board revoked the parole and directed the arrest and return of appellee to the Missouri Penitentiary.

Appellee was then arrested by an Arkansas parole officer and lodged in the Pulaski county jail. On August 30, 1947, he filed a petition for a writ of *habeas corpus* before the judge of the First Division of the Pulaski Circuit Court and was granted bail pending a hearing before the Governor of Arkansas on extradition proceedings instituted by the State of Missouri. A governor's warrant for appellee's removal to Missouri issued as a result of this proceeding and appellee was again lodged in the Pulaski county jail.

On September 20, 1947, a second petition for a writ of *habeas corpus* was filed before the same judge in which appellee attacked the validity of the extradition proceedings and the governor's warrant issued thereon. On October 15, 1947, appellant, Tom Gulley, Sheriff of Pulaski county, filed his response to the petition alleging that he was holding appellee under authority of Act 172 of 1937 and the compact entered into between the states of Arkansas and Missouri pursuant to the provisions of said act. The response did not deny the invalidity of the extradition proceedings before the Governor as alleged in the petition. By permission of the court appellee later filed a reply to the, response of appellant in which the constitutionality of said Act 172 was challenged on the grounds hereinafter discussed.

At a hearing held on October 15, 1947, appellant admitted, and the trial court held, that the extradition pro-

ceedings before the Governor had been abandoned and that appellant's authority for the detention of appellee rested solely on the interstate compact under Act 172, *supra*. Appellant introduced testimony showing the conviction of appellee, the agreement under which appellee was paroled and the revocation of said parole by the Missouri. board. Evidence was also introduced establishing the identity of appellee and the authority of the Missouri parole officer designated by the board as the agent for the return of appellee to Missouri. At the conclusion of the hearing on October 15, 1947, further action was postponed until October 29, 1947, when the trial court rendered its decision holding Act 172 of 1937 unconstitutional and void. The writ of *habeas corpus* was accordingly granted and appellee ordered discharged. The sheriff of Pulaski county has appealed.

In holding the act unconstitutional the trial court based its decision primarily on the ground that Act 172 violates Art. I, § 9 of the Constitution of the United States which provides that the privilege of the writ of *habeas corpus* shall not be suspended except in cases of rebellion or invasion. The court specifically found: "The Act of Congress (18 U. S. C. A., § 420) authorized the compact, but did not authorize state legislation flowing therefrom which would deny the petitioner due process of law. The Act provides in effect that officers of the sending state may retake a parolee without any process of law and that its right to such seizure of the person shall not be reviewable by our courts. This is a denial of the right to have the writ issued at all, and a hearing on the legality of the detention is thereby avoided. It does not even provide that the courts may determine the authority of the officer or identity of the person. It provides no forum for the determination of these two requirements which are the only obstacles left in the Act to delay the apprehension and removal of the person to the demanding State." The court also found that the only source of authority for the interstate compact is Art. IV, § 2 of the U. S. Constitution and the congressional enabling acts thereto; and that this constitutional

provision contained no limitation or modification of the privilege of the writ of *habeas corpus*.

Article I, § 10 of the Constitution of the United States prohibits a state from entering into any agreement or compact with another state without the consent of Congress. In recognition of this constitutional provision, Congress, in 1934, enacted a statute (48 Stats. 909, 18 U. S. C. A., § 420) giving its consent to the several states to enter into compacts "for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts."

Pursuant to this statute the uniform act in question has been enacted in most of the states, including Arkansas and Missouri. The act authorizes and directs the Governor to enter into a compact on behalf of the state with any of the other states legally joining therein, permitting parolees to reside out of the state in which they have been convicted and sentenced. It further obligates the receiving state to assume the duties of visitation and supervision of such parolees by the same standards that prevail for its own. On September 15, 1937, the Governor of Arkansas entered into the compact with other states adopting the uniform act. Missouri became a party to the compact with Arkansas on April 3, 1947.

The particular provision of Act 172 of 1937 held to be unconstitutional by the trial court is found in § I (3) of the act, which reads: "That duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole

shall be conclusive upon and not reviewable within the receiving state: Provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense.''

Appellee argues that this section conflicts with Art. IV, § 2, clause 2 of the Constitution of the United States and 18 U. S. C. A., § 662. It is insisted that this constitutional provision and congressional act provide the only method by which appellee might be returned to the State of Missouri. The section of the Constitution referred to provides: ''A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.'' This provision is not self-executing. *Com. of Kentucky* v. *Dennison,* 24 How. 66, 16 L. Ed. 717. Congress subsequently enacted R. S., § 5278, 18 U. S. C. A., § 662, which prescribes the procedure to be followed in making the constitutional provision effective.

Our attention has been called to only one case in which the question of the constitutionality of the uniform act has been decided. *Ex parte Tenner,* 20 Cal. 2d 670, 128 Pac. 2d 338. In that case Tenner was convicted of a felony in the State of Washington and sentenced to a term of five years in the state penitentiary. Thereafter he was paroled and permitted to go to the State of California. The parole was later revoked by Washington parole authorities, who ordered Tenner's return to the penitentiary. Tenner was arrested in California and on application for a writ of *habeas corpus* the California Supreme Court, one judge dissenting, denied the writ and held the uniform act in question constitutional. The petitioner in that case assailed the act on the same grounds now urged by appellee in support of the trial

court's adjudication of unconstitutionality in the case at bar. After tracing the history of the constitutional provisions and legislative enactments relating to the subject of extradition, the California court concluded that the act in question did not violate any constitutional provision. In reaching this conclusion the court said:

"The administration of parole is an integral part of criminal justice, having as its object the rehabilitation of those convicted of crime and the protection of the community. Unquestionably such rehabilitation of a parolee may often be facilitated by transferring him to another state, with new surroundings and better opportunities for employment. It is apparent, however, that the success of such out-of-state transfers requires adequate control and intelligent supervision of parolees during the period of their readjustment to civil life. And from the standpoint of the protection of society, there is sound reason for an agreement between states that the authority over parolees should follow them across state lines. The knowledge on the part of the out-of-state parolee that he may summarily be returned to prison for any violation of the rules which he has agreed to obey undoubtedly is an effective check upon any inclination to violate parole.

"The compact represents the social policy of both California and Washington in this regard. It is an agreement for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of the criminal laws of each state within the contemplation of the federal legislation and therefore does not violate the prohibition of the Constitution concerning compacts between states.

"Nor does the act of the respondent deprive the petitioner of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution. He had his day in court when he was tried and convicted of a felony and sentenced to a maximum term of five years in the Washington State Penitentiary. The parole which he accepted was granted

upon the express condition that the Board of Prison Terms and Paroles 'may at any time within its discretion and without notice cause the parolee to be returned to the said institution to serve the full maximum sentence or any part thereof.' One convicted of crime has the right to reject an offer of parole, but once having elected to accept parole, the parolee is bound by the express terms of his conditional release. *In re Peterson,* 14 Cal. 2d 82, 92 P. 2d 890. . . .

"Except for § 2 of Art. IV of the Constitution, there would be no question concerning the right of states to provide, by their joint agreement, for the return of a certain class of fugitives, subject, of course, to the constitutional provision regarding interstate compacts. The right created by Art. IV, it has been held, is a guarantee of which a state may avail itself to secure the return of an offender against its law. *State* v. *Parrish,* 242 Ala. 7, 5 So. 2d 828, 832; *Ex parte Roberts,* 186 Wash. 13, 56 P. 2d 703. And since the extradition provision is not for the benefit of the fugitive, an asylum state may require the Governor to surrender a fugitive on terms less exacting than those imposed by the act of Congress. *State ex rel. Treseder* v. *Remann,* 165 Wash. 92, 4 P. 2d 866, 78 A. L. R. 412. As authority to require the return of fugitives originally existed in the states and remains there except as expressly limited by the Constitution, even in the field of federal extradition, the act of Congress is not exclusive of state action which does not come within its express terms. On the contrary, said the Supreme Court of the United States, it must have been intended to leave subjects within the constitutional power and not provided for by that statute subject to the state authority which then controlled them. *Innes* v. *Tobin,* 240 U. S. 127, 36 S. Ct. 290, 60 L. Ed. 562. Neither the terms of the constitutional provision nor the act of Congress making it effective indicate that the extradition·procedure was intended to be exclusive. . . .

"The existence of an independent method of securing the return of out-of-state parolees does not conflict with nor render ineffectual the federal laws with relation to

extradition. The federal method of extradition is always present and may be invoked when necessary to secure the right to return of the fugitive to the demanding state. Also states not party to the interstate compact are free to invoke that procedure to secure the return of fugitive parolees. And if a state has elected to follow the federal procedure and claim the constitutional guarantee, the fugitive of course has the right to insist, on *habeas corpus,* that the procedure conform to the federal law. Similarly the parolee detained under the interstate compact has the right to complain, by means of *habeas corpus,* if that law is not complied with by the authorities. But no right exists on the part of the parolee, whose parole has been revoked, to claim that he may only be removed by the method of his choosing. And since the statute applies uniformly to all parolees from states party to the compact, the petitioner may not complain that the statute deprives him of the equal protection of the laws.'' (Citing cases.)

We concur in the views thus expressed by the California court and conclude that the states, by adoption of the act in question, have established a valid method of procuring the return of a particular class of fugitives which is independent, but not exclusive, of the regular extradition procedure. We are also of the opinion that the trial court misconstrued the act as meaning that a parolee is denied the right to resort to the writ of *habeas corpus* to determine whether the act has been complied with by the authorities in establishing the authority of the officer and the identity of the person to be retaken. As pointed out by the California court, a parolee detained under the compact still retains this right under the act. It is the decision of the sending state to retake the parolee that is made conclusive and not subject to review within the receiving state.

Appellee contends that even if we follow the holding in the Tenner case, *supra,* he should nevertheless be discharged for the reason that appellant, by first resorting to the regular method of federal extradition in the pro-

ceedings before the Governor, became bound by this election and is precluded from relying on the provisions of the interstate compact. In support of this contention, appellee relies on the following statement of the court in the Tenner case, *supra*: "Of course, when a state elects to use the method of federal extradition, and in so doing has made the demand as required by the Constitution and act of Congress, the federal law applies and governs the procedure of return." It is true that the federal procedure and the Uniform Extradition Act (Act 126 of 1935) were applicable, exclusively, so long as appellant pursued this method of procedure. But appellant completely abandoned the federal procedure at the hearing held on October 15, 1947, and relied solely on the compact under Act 172 of 1937 as his authority for the detention of appellee. Appellee made no objection to the action of the trial court in permitting this to be done. Under these circumstances, appellee is precluded from raising this objection for the first time here. Moreover, this court is committed to the rule that the testing of the sufficiency, or legality, of extradition proceedings does not render a subsequent application for extradition *res judicata*. *Letwick* v. *State,* 211 Ark. 1, 198 S. W. 2d 830.

The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the petition of appellee and remand him to the custody of the sheriff of Pulaski county who will deliver appellee to the authorized agent of the State of Missouri for return to that state.