87 So.2d 633

James **WOODS**

v.

**STATE.**

**6 Div. 945.**

Supreme Court of Alabama.

May 24, 1956.

Matt Murphy, Jr., Birmingham, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for appellee.

LIVINGSTON, Chief Justice.

This is an appeal under Sec. 369, Title 15, Code of Alabama 1940, taken by petitioner from a judgment on a petition for writ of habeas corpus. The judge granted the writ, had a hearing on the return of the sheriff, and thereupon made the following order:

"This the 16th day of August, 1955, this cause coming on to be heard by the Court on the Petition and Writ, the State offers Sheriff's return as by separate paper filed, and the petitioner moves to strike the return showing Sheriff's return as filed, and said motion being considered by the Court, it is ordered and adjudged by the Court that said motion be and the same is hereby overruled; and it is agreed by and between the parties herein that the Governor of Alabama has legally entered in the compact herein involved with the Governor of the State of New York; and the defendant by oral pleas says that the law as provided in the Code of Alabama 1940, Title 42 Section 27 is unconstitutional in that the defendant herein is denied the due process of law as provided by the State and Federal Constitutions; and the motion by petitioner, to grant the writ of habeas corpus and discharge petitioner in the proceedings on the ground set forth in the stenographic notes, being considered by the Court, it is ordered and adjudged by the Court that said motion be and the same is hereby overruled.

"The Petitioner, thereupon in open Court, gave notice of appeal to the Supreme Court of Alabama, and said judgment is hereby suspended, pending action of said Supreme Court of Alabama."

The return of the sheriff admitted that he held petitioner in custody but by virtue of the following authority:

" * * * a complaint and warrant of arrest issued by the Judge of the Jefferson County Court of Misdemeanors on the 15th day of August, 1955, directing the arrest of the said James Woods and his delivery to a duly authorized agent of the State of New York, on a charge of Fugitive from Justice and being charged by the State of New York with Parole Violating, a copy of which warrant is attached hereto and made a part hereof.

"Premises Considered, Respondent, Holt A. McDowell, as Sheriff of Jefferson County, Alabama, moves the Court to dismiss the petition and writ issued herein and return the said James

**318**

Woods to his custody as Sheriff of Jefferson County, Alabama, to be delivered to the Agent of the State of New York."

The warrant under which petitioner was held is as follows:

"Personally appeared before the undersigned as Ex-Officio Judge of the Jefferson County Court of Misdemeanors, of Jefferson County, in and for said County R. E. Belcher who being duly sworn, says that James Woods whose name is otherwise unknown to affiant, within twelve months before making this affidavit, in said County, Being a fugitive from justice and being charged by the State of New York with Parole Violating and is now domiciled or hiding in this state, against the peace and dignity of the State of Alabama."

The judgment rendered by the Jefferson County Court of Misdemeanors is as follows:

"The State vs. James Woods—Fugitive from justice—8–14 8–29

Attorneys M. Murphy—Affidavit and warrant issued to R. E. Belcher. Returnable by Holt McDowell.

"Aug. 15 1955—Plea of not guilty. Case tried. Evidence heard. The def. is declared to be a fugitive from justice, and is ordered to be released to the New York authorities. G. C. Boner, J.

"The def. by his atty. notified the court that he is going to file a writ of habeas corpus. The def. is ordered held for—pending outcome of the writ. G. C. Boner, J."

■ The state has submitted a motion to dismiss the appeal because appellant has not filed a brief as required by the Rules of the Supreme Court, Code 1940, Tit. 7 Appendix. We note that in criminal cases it is not necessary for the appellant to submit a brief on appeal. Sec. 389, Tit. 15, Code 1940; Higginbotham v. State, 262 Ala. 236, 78 So.2d 637, and cases there cited. That statute does not expressly dispense with a brief by appellant, but requires the court on appeal in criminal cases to "consider all questions apparent on the record or reserved by bill of exceptions." New Supreme Court Rule applies "in criminal cases, *and in all other cases in which briefs are not required.*" Rule 16.

■ It seems to be the general opinion that habeas corpus is a civil, as distinguished from a criminal, remedy or proceeding, regardless of whether the prisoner is detained under civil or criminal process. 39 C.J.S., Habeas Corpus, § 1, p. 426; Ex parte Tom Tong, 108 U.S. 556, 2 S.Ct. 871, 27 L.Ed. 826; Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009; Ex parte Smotherman, 140 Ala. 168, 37 So. 376.

■ Section 369, supra, which governs here, provides that on appeal in such cases the appellate court shall "consider the case on the record and the evidence as set forth." Said section expressly provides that no bill of exceptions or assignments of error are necessary or required.

It follows that since no briefs are required on such appeals, Rule 16, supra, applies to them as in criminal cases. The appeal should not be dismissed for the absence of a brief for appellant.

Neither party to this appeal has filed a brief on the merits. But it is our duty to consider the case on the record and the evidence as set forth, to see if the order of the trial judge is correct and should be affirmed, or is erroneous and should be reversed,—all as required by Sec. 369, supra.

On the trial, the evidence showed that petitioner was arrested on the warrant [copied hereinabove], and on trial was "ordered to be released to the New York authorities." The proceeding for his arrest and the order releasing him to the New York authorities were claimed by virtue of Sec. 27, Tit. 42, Code of 1940.

On the trial of this habeas corpus case, it was agreed in open court that pursuant to Sec. 27, supra, the Governor of Alabama and the Governor of New York had entered into an agreement as recited in the

statute. But defendant contended that our statute, supra, is void because it violates the due process clause of the Constitution, and that the order for his release to the New York officers was without legal authority. That contention was denied and overruled, and it presents the only matter shown by the transcript, which is our duty to consider on this appeal under Sec. 369, supra.

The statute referred to, Sec. 27, Tit. 42, Code 1940, is a codification of an act approved August 24, 1939, General Acts 1939, p. 432. It recites that it was enacted upon the authority of an Act of Congress granting the consent of Congress to such a pact between the governors of two or more states. We find the Act of Congress first appears in 48 U.S. Statutes at Large 1933–34, p. 909, Chapter 406, and is in the following language:

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts.

"Sec. 2. The right to alter, amend, or repeal this Act is hereby expressly reserved.

"Approved, June 6, 1934."

It was due to be Sec. 420, Tit. 18 U.S.C.A. The pocket part contains reference to its readoption May 24, 1949, c. 139, § 129(b), 63 Stat. 107. Instead of being carried into Tit. 18, it now appears in Title 4, § 111, U.S.C.A.

Section 27, Tit. 42, supra, does not contemplate such a proceeding based upon an affidavit and warrant for violating a parole in New York, but provides that under such a pact with New York it may permit a parolee of that state under named circumstances to reside in Alabama without that circumstance violating his parole. Those circumstances were not shown by the evidence, nor was it necessary to do so. Sec. 27, supra, provides that duly "accredited officers of a sending state [New York here] may at all times enter a receiving state [Alabama] and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state." We need not refer to the other features of the act.

It will be observed that it does not provide for any preliminary proceeding to be conducted by the New York officer before apprehending and retaking a probationer or parolee, nor for any judicial proceeding to determine the identity of the person apprehended, or whether his probation or parole has been revoked or whether the person arresting him is "a duly accredited officer" of New York.

The validity of this procedure was questioned in Arkansas, and considered in the case of Gulley v. Apple, 213 Ark. 350, 210 S.W.2d 514, 518. There, the trial court held that because no proceeding was required to apprehend and retake a parolee, and no provision for reviewing the legality of such seizure, it violated due process, and that Article IV, Sec. 2, Clause 2 of the United States Constitution and Acts of Congress were the only authority for such procedure, and it was not authorized by them. On appeal, attention was called to Article I, Sec. 10 of the Constitution, which provides that "No state shall enter into any Treaty, Alliance or Confederation" without the consent of Congress. It was pointed out that Congress had consented by the enactment to which we have referred and that Missouri and Arkansas had entered into

a compact adopting the Uniform Act. The court referred to that feature of the Uniform Act, which we have here copied, and the contention that it violated due process. In answering it, the Arkansas Supreme Court referred to Article IV, Sec. 2, Clause 2, supra, and the Congressional Acts, and then proceeded:

"Our attention has been called to only one case in which the question of the constitutionality of the uniform act has been decided. Ex parte Tenner, 20 Cal.2d 670, 128 P.2d 338, 341. In that case Tenner was convicted of a felony in the State of Washington and sentenced to a term of five years in the state penitentiary. Thereafter he was paroled and permitted to go to the State of California. The parole was later revoked by Washington parole authorities, who ordered Tenner's return to the penitentiary. Tenner was arrested in California and on application for a writ of habeas corpus the California Supreme Court, one judge dissenting, denied the writ and held the uniform act in question constitutional. The petitioner in that case assailed the act on the same grounds now urged by appellee in support of the trial court's adjudication of unconstitutionality in the case at bar. After tracing the history of the constitutional provisions and legislative enactments relating to the subject of extradition, the California court concluded that the act in question did not violate any constitutional provision. In reaching this conclusion the court said:

" 'The administration of parole is an integral part of criminal justice, having as its object the rehabilitation of those convicted of crime and the protection of the community. Unquestionably such rehabilitation of a parolee may often be facilitated by transferring him to another state, with new surroundings and better opportunities for employment. It is apparent, however, that the success of such out-of-state transfers requires adequate control and intelligent supervision of parolees during the period of their readjustment to civil life. And from the standpoint of the protection of society, there is sound reason for an agreement between states that the authority over parolees should follow them across state lines. The knowledge on the part of the out-of-state parolee that he may summarily be returned to prison for any violation of the rules which he has agreed to obey undoubtedly is an effective check upon any inclination to violate parole.

" 'The compact represents the social policy of both California and Washington in this regard. It is an agreement for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of the criminal laws of each state within the contemplation of the federal legislation and therefore does not violate the prohibition of the Constitution concerning compacts between states.

" 'Nor does the act of the respondent deprive the petitioner of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution. He had his day in court when he was tried and convicted of a felony and sentenced to a maximum term of five years in the Washington State Penitentiary. The parole which he accepted was granted upon the express condition that the Board of Prison Terms and Paroles "may at any time within its discretion and without notice cause the parolee to be returned to the said institution to serve the full maximum sentence or any part thereof." One convicted of crime has the right to reject an offer of parole, but once having elected to accept parole, the parolee is bound by the express terms of his conditional release. In re Peterson, 14 Cal.2d 82, 92 P.2d 890. * * *

" 'Except for section 2 of article IV of the Constitution, there would be no question concerning the right of states to provide, by their joint agreement, for the return of a certain class of fugitives, subject, of course, to the

constitutional provision regarding interstate compacts. The right created by article IV, it has been held, is a guarantee of which a state may avail itself to secure the return of an offender against its law. State v. Parrish, 242 Ala. 7, 5 So.2d 828, 832; Ex parte Roberts, 186 Wash. 13, 56 P.2d 703. And since the extradition provision is not for the benefit of the fugitive, an asylum state may require the governor to surrender a fugitive on terms less exacting than those imposed by the act of Congress. State ex rel. Treseder v. Remann, 165 Wash. 92, 4 P.2d 866, 78 A.L.R. 412. As authority to require the return of fugitives originally existed in the states and remains there except as expressly limited by the Constitution, even in the field of federal extradition, the act of Congress is not exclusive of state action which does not come within its express terms. On the contrary, said the Supreme Court of the United States, it must have been intended to leave subjects within the constitutional power and not provided for by that statute subject to the state authority which then controlled them. Innes v. Tobin, supra (240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562). Neither the terms of the constitutional provision nor the act of Congress making it effective indicate that the extradition procedure was intended to be exclusive. * * *

" 'The existence of an independent method of securing the return of out-of-state parolees does not conflict with nor render ineffectual the federal laws with relation to extradition. The federal method of extradition is always present and may be invoked when necessary to secure the right to return of the fugitive to the demanding state. Also states not party to the interstate compact are free to invoke that procedure to secure the return of fugitive parolees. And if a state has elected to follow the federal procedure and claim the constitutional guarantee, the fugitive of course has the right to insist, on habeas corpus, that the

procedure conform to the federal law. Similarly the parolee detained under the interstate compact has the right to complain, by means of habeas corpus, if that law is not complied with by the authorities. But no right exists on the part of the parolee, whose parole has been revoked, to claim that he may only be removed by the method of his choosing. And since the statute applies uniformly to all parolees from states party to the compact, the petitioner may not complain that the statute deprives him of the equal protection of the laws.' " (Citing cases.)

The opinion then stated:

"We concur in the views thus expressed by the California court and conclude that the states, by adoption of the act in question, have established a valid method of procuring the return of a particular class of fugitives which is independent, but not exclusive, of the regular extradition procedure. We are also of the opinion that the trial court misconstrued the act as meaning that a parolee is denied the right to resort to the writ of habeas corpus to determine *whether the act has been complied with by the authorities in establishing the authority of the officer and the identity of the person to be retaken.* As pointed out by the California court, a parolee detained under the compact still retains this right under the act. It is the decision of the sending state to retake the parolee that is made conclusive and not subject to review within the receiving state.

"Appellee contends that even if we follow the holding in the Tenner case, supra, he should nevertheless be discharged for the reason that appellant, by first resorting to the regular method of federal extradition in the proceedings before the Governor, became bound by this election and is precluded from relying on the provisions of the interstate compact. In support of this contention, appellee relies on the following statement of the court

in the Tenner case, supra: 'Of course, when a state elects to use the method of federal extradition, and in so doing has made the demand as required by the Constitution and act of Congress, the federal law applies and governs the procedure of return.' It is true that the federal procedure and the Uniform Extradition Act (Act 126 of 1935) were applicable, exclusively, so long as appellant pursued this method of procedure. But appellant completely abandoned the federal procedure at the hearing held on October 15, 1947 and relied solely on the compact under Act 172 of 1937 as his authority for the detention of appellee. Appellee made no objection to the action of the trial court in permitting this to be done. Under these circumstances, appellee is precluded from raising this objection for the first time here. Moreover, this court is committed to the rule that the testing of the sufficiency, or legality, of extradition proceedings does not render a subsequent application for extradition res judicata. Letwick v. State, 211 Ark. 1, 198 S.W.2d 830." (Emphasis supplied.)

We have copied the foregoing extensively since the questions are new in Alabama and in other states. The argument and conclusion which are set out above are, we think, sound and are here adopted.

This act has been upheld also in the case of Pierce v. Smith, 31 Wash.2d 52, 195 P.2d 112.

The questions on habeas corpus when the statute in question is relied on are: (1) a compact between the governors as authorized by the statute; (2) whether the officer apprehending the person involved is a duly accredited officer of the sending state (New York here); (3) whether the person apprehended is in fact a probationer or parolee of that state; and (4) whether the sending state has revoked the probation or parole of the person apprehended and decided to retake him.

The petition for habeas corpus here in question does not challenge any of those

requirements. The only question involved on the appeal is the constitutionality of the statute, Sec. 27, Tit. 42, supra, for being violative of due process. We do not agree with such contention. Therefore, there was no error in the order of the judge declining to grant the discharge of the petitioner.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.