MURDOCK, Justice
(dissenting).
Because I believe original appellate jurisdiction over this matter lies with the Court of Criminal Appeals, I respectfully dissent.
Curtis J. Cook, Jr., and Joe Daniel Holt, Jr. (sometimes hereinafter referred to collectively as “the petitioners”), seek an actual release from prison. This, in my view, makes all the difference. It makes their claims quite different than a claim merely for money damages to compensate for the conditions of their past confinement or for equitable relief to alter the conditions of their future confinement. Review of an action seeking an actual physical release from penal incarceration expressly falls, and appropriately so, within the appellate jurisdiction of the Court of Criminal Appeals. To put it colloquially, whether to release a prisoner from prison is a subject within the Court of Criminal Appeals’ “wheelhouse.”
I begin by emphasizing a point with which I believe the main opinion agrees: The Alabama Prisoner Litigation Reform Act, § 14-15-1 et seq., Ala.Code 1975 (“the APLRA”), does not create or provide some new cause of action by which an inmate may complain of the conditions of his or her confinement, nor does it create or provide for a release from prison as a substantive remedy or form of relief for any such action. Rather, it contemplates that other law (e.g, the Eighth Amendment to the United States Constitution) might already provide such a cause and, under the right circumstances, might provide for a release from prison as the necessary remedy for such a cause. On that basis, the APLRA seeks merely to impose certain procedural requirements or conditions on any such action seeking to obtain such relief. The threshold question in these cases is whether such an action, seeking the release of a convicted prisoner, would by its nature constitute a habeas corpus action that falls within the original appellate jurisdiction of the Court of Criminal Appeals.[8]
*325 The main opinion posits that, “[b]ecause Cook’s and Holt’s mandamus petitions arise from actions seeking relief based on the conditions of their incarceration, rather than from actions giving rise to their incarceration, the proceedings underlying the petitions are civil ... in nature.” 202 So.3d at 318. It also notes that the APLRA refers to actions governed by it as “civil.” Id. For present purposes these points may be conceded, but they do not show that the petitioners’ claims for an actual release from prison are not within the appellate jurisdiction of the Court of Criminal Appeals. Both habeas corpus petitions and Rule 32, Ala. R.Crim. P., proceedings are labeled by our jurisprudence as “civil” actions. See Woods v. State, 264 Ala. 315, 318, 87 So.2d 633, 635-36 (1956) (“It seems to be the general opinion that habeas corpus is a civil, as distinguished from a criminal, remedy or proceeding.”); Ex parte Wright, 860 So.2d 1253, 1254 (Ala.2002) (“ ‘[P]ost-conviction proceedings filed pursuant to Rule 32 are civil proceedings.’ State v. Hutcherson, 847 So.2d 378, 383 (Ala.Crim.App.2001).”). Yet both are within the appellate jurisdiction of the Court of Criminal Appeals pursuant to § 12-3-9. See note 8, supra.
The main opinion also reasons that
“§ 14-15-2 expressly provides that the APLRA does not apply to actions brought pursuant to § 15-21-1, Ala. Code 1975, which governs habeas corpus proceedings. Thus, although the APLRA provides that a prisoner may seek release from incarceration as a form of relief, our legislature clearly intended to make a distinction between a prisoner’s action seeking release from incarceration pursuant to the procedures set forth in the APLRA and a prisoner’s petition for a writ of habeas corpus. Because Cook’s and Holt’s petitions for release seek relief as prescribed by the APLRA, we conclude that their petitions are not in the nature of habeas corpus petitions.”
202 So.3d at 319.
The problem with this argument, as I see it, is that' § 15-21-1, Ala.Code 1975, does not codify the entire universe of common-law habeas corpus actions. If it did, § 14-15-2, Ala.Cod'e 1975, would come closer to being the suggested expression of legislative intent that no action or request for relief governed, or limited, by the APLRA should be considered a habeas corpus, action. But 15-21-1 codifies only that, species of habeas corpus by which someone seeks to inquire into the reason for a pre-conviction confinement; it states merely that
“[a]ny person who is imprisoned or restrained of his liberty in the State of Alabama on any criminal charge or accusation or under any other pretense whatever ... may[, subject to certain exceptions not applicable in these cases,] prosecute a writ of habeas corpus according to the provisions of this ehapter[, i.e„ Title 15, Chapter 21,] to inquire into the cause of such imprisonment or restraint.”
(Emphasis added.) Thus, it is not surprising that the legislature might expressly confirm in the APLRA that the APLRA was not intended to govern the specific, pre-conviction habeas action described in § 15-21-1. That does not mean that an action to, which the APLRA does apply, *326 one in which a convicted inmate seeks release from state custody, cannot be understood to be a habeas corpus action. I believe that, by definition and by intrinsic nature, it is.
In these cases, the relief the petitioners have requested from the courts is an actual release from incarceration. Such a petition is by definition in the nature of habeas corpus. See Price v. Johnston, 334 U.S. 266, 283, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) (“The historic and great usage of the writ, regardless of its particular form, is to produce the body of a person before a court for whatever purpose might be essential to the proper disposition of a cause.” (emphasis added)); Black’s Law Dictionary 825 (10th ed.2014) (defining the term “habeas corpus” literally as “that you have the body”); Zach Howe, Detainment Power: The Limits of the President’s Power to Suspend Habeas Corpus During Military Conflicts, 37 Harv. J.L. & Pub. Pol’y 677, 677 n: 1 (2014) (“Habeas corpus means, literally, ‘produce the body.’”); Brian R. Means, Postconviction Remedies § 7:4 (2015) (citing Taylor v. Egeler, 575 F.2d 773, 773 (6th Cir.1978) (per curiam)) (“ ‘The literal meaning of the writ of habe-as corpus ad subjiciendum comes from the Latin habeas corpus which means' “you should have the body.’” If granted, the writ orders the jailer or other custodian to produce the body' and free the prisoner either absolutely or conditionally.”); ’ Caprice L. Roberts, Rights, Remedies, and Habeas Corpus-The Uighurs, Legally Free While Actually Imprisoned, 24 Geo. Immigr. L.J. 1, 8 (2009) (“The classic Latin definition of habeas corpus is an order: we command that you bring forth the body.”).
Citing Looney v. State, 881 So.2d 1061 (Ala.Crim.App.2002), and Taylor v. State, 455 So.2d 270 (Ala.Crim.App.1984), the respondents argue that, because Cook’s and Holt’s petitions for release concern the conditions of their confinement, rather than the legality of their incarceration, the petitions are not in the nature of habeas corpus. The very reason that the plaintiffs complaint regarding conditions of confinement in Looney was considered by the Court of Criminal Appeals not to be a claim for habeas relief, and therefore not within its jurisdiction, is because that case did not involve a release from prison as the remedy for the stated condition:
“Looney’s pleadings appear to assert a civil liberties violation and to request monetary relief—an action akin to a 42 U.S.C. § 1983 cause of action. Such actions have been characterized by the United States Supreme Court as personal-injury actions. See Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Appeals from personal-injury actions are not within the jurisdiction of this Court.”
Looney, 881 So.2d at 1064.
Quoting from Taylor, the Looney court further explained why the claim in Taylor was not properly understood to be a claim for a writ of habeas corpus:
“‘The relief [the petitioner] seeks from alleged cruel and unusual treatment in the prison system is not cognizable under a writ of habeas corpus, and the appropriate remedy in this case for the claim of illegal conditions of confinement, if proved, would not be release from custody. ... The court stated in Cook v. Hanberry, [592 F.2d [248] at 249 [(5th Cir.1979)]]:
“‘“Assuming arguendo that his allegations of mistreatment demonstrate cruel and unusual punishment, the petitioner is still not entitled to release from prison. Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration. Granville v. Hunt, *327 5 Cir.1969, 411 F.2d 9, 12-13[9]; see also Williams v. Steele, 8 Cir.1952, 194 F.2d 917, cert. denied, 344 U.S. 822, 73 S.Ct. 20, 97 L.Ed. 640 [(1952)]. The relief from such unconstitutional practices, if proved, is in the form of equitably-imposed restraint, not freedom from otherwise lawful incarceration. See Konigsberg v. Ciccone, W.D.Mo.1968, 285 F.Supp. 585, 589, aff'd, 8 Cir.1969, 417 F.2d 161, cert. denied, 397 U.S. 963, 90 S.Ct. 996, 25 L.Ed.2d 255 (1970). This is because the sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose. See Rheuark v. Shaw, 5 Cir.1977, 547 F.2d 1257, 1259; Hill v. Johnson, 5 Cir. 1976, 539 F.2d 439, 440; Pierre v. U.S., 5 Cir.1976, 525 F.2d 933, 935-36.”’”
Looney, 881 So.2d at 1063 (quoting Taylor v. State, 455 So.2d at 270-71) (emphasis added).[10]
Read in a manner most favorable to the position of the respondents in these cases, the decision in Taylor was premised on the notion that the claim at issue there, because it was based on “conditions of confinement,” could not result in an actual release from prison. But, as with Looney, that is precisely why the reliance on Taylor fails here. Here, claims for release from prison that are based on conditions of confinement are before us. Indeed, we deal here with a new Alabama legislative enactment that explicitly contemplates the existence of a claim for a “release order” based on just such a condition, e.g., “crowding.” The very point of § 14-15-10, Ala.Code 1975, is to impose procedural preconditions on the issuance of any “prisoner release order[s]” based on “prison conditions” or, as stated in the above-quoted passage from Looney, from orders that the inmate be granted his “freedom from otherwise lawful incarceration.” Thus, we inescapably deal here with a type of claim not contemplated as even possible by the Court of Criminal Appeals in Taylor. And it falls to this Court to properly understand the intrinsic nature of the .petitioners’ claims and whether those claims fall within the jurisdictional reach of the Court of Criminal Appeals.
In addition to the earlier cited authority regarding the intrinsic nature of claims for release from custody, federal cases have' recognized (1)- that a claim for “release *328 from custody” is by its very nature “an application for habeas corpus” and (2) that, in fact, release from penal custody is only available as a remedy through the mechanism of a habeas action (and not available as a remedy in an action brought under 42 U.S.C. § 1983). In Rodriguez v. McGinnis, 451 F.2d 730, 731 (2d Cir.1971), the United States Court of Appeals for the Second Circuit stated:
“The present application, since it seeks release from custody, is in fact an application for habeas corpus. ‘[R]elease from penal custody is not an available remedy under the Civil Rights Act[, i.e., 42 U.S.C. § 1983].’ Peinado v. Adult Authority, of Dept. of Corrections, 405 F.2d 1185, 1186 (9th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 2116, 23 L.Ed.2d 755 (1969).”
(Emphasis added.) See also United States ex rel. Katzoff v. McGinnis, 441 F.2d 558 (1971) (holding that the inmate’s petition was in. essence an application for habeas corpus since it sought and obtained his immediate release from custody).
In Preiser v. Rodriguez, 411 U.S. 475, 482, 93 S.Ct, 1827, 36 L.Ed.2d 439 (1973), the United States Supreme Court noted that it had previously held “that complaints of state prisoners relating to the conditions of their confinement were cognizable either in federal habeas corpus or under the Civil Rights Act [, i.e., 42 U.S.C. § 1983].” (Emphasis added.) And yet, it also has been held that “a prisoner in state custody cannot use a § 1983 action to challenge ‘the fact or duration of his confinement.’ Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).... He must seek federal habeas corpus relief (or appropriate state relief) instead.” Wilkinson v. Dotson, 544 U.S. 74, 78, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). In essence, therefore, § 1983 applies when the conditions of confinement can be remedied by means other than the release of the prisoner, e.g., through money damages or injunctive relief, but habeas corpus is the remedy where the condition of confinement can be remedied only by a release from that confinement.
In Preiser, the Supreme Court further explained the relationship between civil-rights actions and habeas petitions:
“The problem involves the interrelationship of two important federal laws. The relevant habeas corpus statutes are 28 U.S.C. §§ 2241 and 2254. Section 2241(c) provides that ‘(t)he writ of habe-as corpus shall not extend to a prisoner unless ... (3) (h)e is in custody in violation of the Constitution or laws or treaties of the United States.... ’ Section 2254 provides in pertinent part:
“‘(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

"....'

"....

“It is clear, not only from the language of §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custo-dy.”[11].
*329 411 U.S. at 482-484 (emphasis added). See also Brown v. Plata, 563 U.S. 493, 560, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011) (Scalia, J., dissenting) (explaining, among other things, that Brown involved the use of habeas corpus to. effect the release of prisoners by a three-judge court under the federal Prisoner Litigation Reform Act based, like the claim here, on alleged overcrowding).
As stated at the outset, because I believe jurisdiction over these mandamus petitions lies with the Court of Criminal Appeals, I respectfully dissent.

. In addition to "habeas corpus,” § 12-3-9, Ala.Code 1975, places "post conviction writs in criminal cases” within the "exclusive appellate jurisdiction" of the Court of Criminal Appeals. I leave for another day the question whether an action such as the ones presented in these cases also falls in this latter category.

. As is so often the case in this area of the law, this attempt by the federal court to summarize the holding of a case such as Granville misses the mark. The actual passage referenced reads: "[T]his Court has long taken the position that habeas corpus is not available to prisoners who are complaining only of mistreatment during their legal incarceration. Our rationale has been that ‘it is not the function of the Courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined.' Adams v. Ellis, 5 Cir.1952, 197 F.2d 483, 485.” Granville v. Hunt, 411 F.2d 9, 12 (5th Cir.1969) (emphasis added). See note 11, infra.

. At one juncture, the Looney court stated that "an inmate cannot challenge the conditions of his confinement in a habeas corpus petition,” 881 So.2d at 1063. Clearly, however, that reference was merely to challenges to conditions for which the remedy would be money damages or equitable relief, rather than actual release from prison. Looney specifically reasoned that "'"[t]he relief from such unconstitutional practices, if proved, is in the form of equitably-imposed restraint, not freedom from otherwise lawful incarceration,” ’ ” whereas “ ‘ "the sole function of ha-beas corpus is to provide relief from unlawful imprisonment or custody.” ’ ” Looney, 881 So.2d at 1063, We have here cases in which the contemplated relief is in fact a release from prison. These cases, therefore, are inherently different than Looney, where the petitioner sought only money damages.

. In a case in which the continuation of custody would be in violation, of the Eighth Amendment as it relates to conditions of confinement, the continuation of that custody would be "unauthorized” under the law, or "illegal.” See generally Preiser, 411 U.S. at *329 485 (‘‘[T]he writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law...." (emphasis added)); Price v. Johnston, 334 U.S. at 283 (“The historic and great usage of the writ, regardless of its particular form, is to produce the body of a person before a court for whatever purpose might be essential to the proper disposition of a cause," (emphasis added)).