446 F.2d 272
 UNITED STATES of America ex rel. Frank GRANO, Jr., Appellant,
v.
Raymond T. ANDERSON, Warden, New Castle County Correctional
Institution, Department of Corrections, State of Delaware.
 No. 71-1102.
 United States Court of Appeals, Third Circuit.
 Submitted on Briefs May 4, 1971.
Decided July 9, 1971.
 
 Stephen B. Potter, Sullivan, Potter & Roeberg, Wilmington, Del., for appellant.
 Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for appellee.
 Before KALODNER, VAN DUSEN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT PER CURIAM:
 
 
 1
 Appellant unsuccessfully sought a writ of habeas corpus in the district court challenging the legality of his confinement by the State of Delaware pending the resolution of extradition proceedings instituted in Delaware by the State of Louisiana. This appeal resulted.
 
 
 2
 While appellant was incarcerated in Delaware, serving a sentence on an unrelated charge, the Governor of Louisiana demanded his extradition to stand trial on an information charging simple burglary. In June, 1969, appellant was released from custody in Delaware but was immediately rearrested on the Governor's executive warrant. Thwarted in his attempt to obtain habeas relief in the Delaware state courts,[1] appellant commenced his present action in the court below which denied relief on the ground that the original affidavit accompanying the Louisiana demand for extradition was sufficient to establish probable cause. United States ex rel. Grano v. Anderson, 318 F.Supp. 263 (D.Del.1970).
 
 
 3
 Probable cause in the context of arrest warrants depends on the presence of two criteria: (1) the warrant and supporting documents must justify a finding of probable cause to believe that the offense has been committed, and (2) the warrant and documents supporting it must demonstrate a sufficient basis for a finding of probable cause that the party named in the warrant committed the offense charged. See Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
 
 
 4
 We agree with the district court that the original affidavit by police officers Mantieri and O'Neil which accompanied the extradition demand satisfied these criteria and thus justified a finding of probable cause. We have no difficulty in concluding that the first requirement was met by the averment that a burglary was committed when a safe, located in a building at 3321 Tulane Avenue, New Orleans, was broken into.[2] The second criterion was satisfied by the representation of affiant O'Neill, 'Lieutenant and Technician for the Bureau of Identification, New Orleans Police Department,' that a fingerprint found on the metal box in the opened safe was 'positively identified' by him as that of Frank Grano, by comparing the print with those taken of Grano by the Reno, Nevada, police department.
 
 
 5
 The judgment of the district court will be affirmed.
 
 
 6
 VAN DUSEN, Circuit Judge (dissenting).
 
 
 7
 I respectfully dissent. Particularly since the extradition proceeding challenged here seeks to remove relator from his family and home in this Circuit to New Orleans, Louisiana, I believe that he is entitled to the issuance of a valid arrest warrant by the asylum state after the filing of, and on the basis of, the supporting papers required by the applicable extradition statutes. The outstanding arrest warrant issued by the Governor of Delaware on May 19, 1969, is not such a warrant, since the necessary (in my view) supporting affidavits of September 30 and October 1, 1969, were filed after its issuance.
 
 
 8
 The affidavit of April 14, 1969, on the basis of which the current arrest warrant of May 19, 1969, issued, does not identify the source of the information that a burglary was committed. The source of the information that an offense has been committed must be identified in order to support an independent determination that probable cause exists. Because this case involves a serious constitutional question, and because the consequences of an extradition arrest are generally, and in this case, harsher than the consequences of an ordinary arrest, I am setting out my view at some length.
 
 
 9
 The majority apparently agrees with the reasoning of Kirkland v. Preston, 128 U.S.App.D.C. 148, 385 F.2d 670 (1967), in which the United States Court of Appeals for the District of Columbia Circuit held that the fourth amendment and its probable cause requirements govern extradition arrests as well as ordinary arrests. Under Kirkland the charging documents accompanying the extradition demand,[1] in this case an affidavit, must provide a sufficient basis for a finding of probable cause before the Governor of the asylum state can issue a valid arrest warrant. As a part of this requirement, as the majority notes, those documents must provide a sufficient basis for a finding of probable cause to believe that an offense has been committed.[2]
 
 
 10
 The affidavit of April 14, 1969, which serves as the basis for the Governor's arrest warrant, states in relevant part:
 
 
 11
 T. MANIERI, Patrolman of the New Orleans Police Department, New Orleans, Louisiana, and LOUIS O'NEIL, a Lieutenant and Technician for the Bureau of Identification, New Orleans Police Department, New Orleans, Louisiana, who, upon being duly sworn by the Magistrate did depose and say as follows:
 
 
 12
 That the defendant, FRANK GRANO, on August 5, 1967, committed a violation of LSA R.S. 14:62 relative to simple burglary of the building and structure located at 3321 Tulane Avenue in the City of New Orleans. Affiants identify the defendant, as the person charged with this violation, from a latent print lifted by Ptn. T. MANIERI from a metal box located inside the safe which had been broken into at the scene of the burglary. This print was positively identified by Lt. LOUIS O'NEIL as that of FRANK GRANO, alias John Franklin, DOB 7/24/34, left index finger. Identification was made from a set of FRANK GRANO's fingerprints, #70808, taken by the Reno, Nevada, Police Department.
 
 
 13
 Reno, Nevada, fingerprint classification, #70808, and Reno, Nevada, Police Photo #70808, are attached hereto and made part of this Affidavit.
 
 
 14
 An adequate basis for a finding of probable cause to believe that an offense has been committed must appear on the face of the affidavit.[3] In order to establish probable cause, the decision in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), as amplified in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), requires that affidavits supporting a warrant contain a statement of the facts relied upon to establish probable cause, as well as sufficient identification of the sources of those facts to warrant the conclusion that the facts recited are probably true. The above affidavit contains mere conclusory statements that a crime has been committed, and such conclusory statements are insufficient to establish probable cuase. The requirement that the affidavit recite the facts relied upon by the affiant to support the conclusion that probable cause exists is simply a part of the larger principle that the official charged with acting on the affidavit must be able to judge for himself the persuasiveness of those facts, as well as make an independent determination that they establish probable cause.[4] Thus the sources of the facts recited, as well as the facts themselves, become pritical, because a determination of the persuasiveness of the matters recited necessarily entails an evaluation of the reliability of the sources of the facts recited. In other words, an affidavit must supply sufficient factual information to support an independent judgment that the affiant's recitations regarding the commission of a crime are probably true. This element of reliability or persuasiveness, which requires that the source of the factual recitations be identified, can be easily supplied by a statement that the matters recited in the affidavit as based on the affiant's personal knowledge, are based on sources identified by the affiant, or are based under certain circumstances on unidentified sources which the affiant knows to be reliable.[5]
 
 
 15
 The statement declared insufficient in Giordenello[6] and the first sentence of the body of the instant affidavit are for all practical pursposes identical. Thus the first sentence of the body of the instant affidavit cannot be held the establish probable cause to believe that an offense had been committed.[7] The second sentence of the body of the affidavit whose chief purpose is to connect relator with the alleged crime, contains the phrase 'latent print lifted by Ptn. T. MANIERI from a metal box located inside the safe which had been broken into at the scene of the burglary.' Although this sentence is premised upon the conclusory first sentence, as can be seen from the use of 'scene of the burglary,' the phrase 'safe which had been broken into' does have some bearing on probable cause to believe that an offense had been committed. But the affidavit contains no facts to support the conclusion[8] that the safe was broken into, nor is it clear that Ptn. T. Manieri personally observed facts leading to the conclusion that the safe had been broken into. The affidavit does not recite any facts to support a conclusion that the chief element of simple burglary, unauthorized entry,[9] is present in this case. These difficulties might be cured if we could assume that Ptn. T. Manieri spoke with personal knowledge of facts indicating that a burglary had taken place, but Giordenello also establishes the principle that those charged with acting upon an affidavit may not indulge the presumption that conclusions contained in the affidavit are based on the personal knowledge of the affiant. This affidavit recites conclusions rather than facts, and does not indicate either the source of or the basis for those conclusions. Absent identification of sources, the necessary element of reliability or persuasiveness is absent.
 
 
 16
 The crux of the issue in this case, as in Giordenello, is that inferences to be drawn from the recitations of an affidavit must 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). Here, as in Giordenello, 'it is difficult to understand how the (Governor) could be expected to assess independently the probability'[10] that a crime had in fact been committed for neither the facts supporting such an inference, nor the sources of the information necessary to support such an inference are identified. I believe that the Governor's warrant based on this affidavit should be held invalid on the ground that the affidavit does not afford a basis for a finding of probable cause to believe that a crime has in fact been committed, because of its failure to recite either facts stated to be within the affiant's personal knowledge, or facts attributed to sources adequately identified as reliable.
 
 
 17
 I would require the Louisiana authorities to supply the facts supporting the conclusions in the affidavit, as well as the sources of such facts, before I would permit relator's arrest and extradition from Delaware to Louisiana. That is all that is involved in this case. This is not a case where police officers have already acted in good faith on the strength of a warrant, and where declaring the warrant invalid would bring into play the often harsh effects of an exclusionary rule. The administration of justice will not be frustrated in the slightest by requiring the Louisiana authorities to supply the facts supporting the conclusions in the affidavit, for if they do not have such facts they obviously have no case against relator. The probable cause question is a close one in this case. I believe, however, that in cases of this type, where the consequences of an arrest are more serious than the consequences of an ordinary arrest, and where there is no possibility that justice will be frustrated as a result of holding a warrant invalid, courts should give the defendant the full benefit of the doubt by requiring strict adherence to the applicable legal rules.
 
 
 18
 I thus agree with the Delaware Superior Court's carefully considered resolution of this issue.[11] Following the procedure adopted by the Court of Appeals for the District of Columbia Circuit in Kirkland v. Preston, 128 U.S.App.D.C. 148, 385 F.2d 670 (1967), the Delaware Superior Court permitted the State of Louisiana to cure the defective affidavit by supplementing the record with affidavits alleging sufficient evidence of probable cause to justify arrest. The Louisiana authorities reponded with affidavits curing the defect, and relator does not contend that these affidavits fail to establish probable cause. Relator now contends that the supplemental affidavits are insufficient to permit extradition because they are not 'certified as authentic by the governor or chief magistrate' of Louisiana, as specified in the terms of the federal interstate extradition statute.[12] He also contends that the supplemental affidavits fail to meet the requirements of the federal statute, as they were made before a notary public rather than 'before a magistrate.' I do not, however, find it necessary to consider whether the supplemental affidavits would suffice under the federal statute. The federal statute, enacted by Congress in 1793, prescribes the terms upon which an asylum state shall extradite a fugitive to a demanding state. I agree with the construction placed upon the federal statute by the New York Court of Appeals, which has held that the statute 'does not purport, expressly or impliedly, to prohibit a State from extraditing on less exacting terms.' People ex rel. Matochik v. Baker, 306 N.Y. 32, 37, 114 N.E.2d 194, 197 (1953).[13] The federal interstate extradition statute is of course controlling on the states with regard to when they have an absolute duty to extradite a fugitive,[14] but it does not pre-empt the field and thereby preclude the states from legislating to permit extradition on less exacting terms, or from legislating to permit extradition of those who are not fugitives from the demanding state.[15] The purpose of the federal interstate extradition statute is to assure the speedy rendition of fugitives under the conditions set forth in the statute,[16] and neither it nor article four of the Constitution[17] confers any federal right on a fugitive not to be extradited pursuant to a state statute permitting extradition under less exacting conditions than those set forth in the federal statute.[18]
 
 
 19
 I thus turn to the Delaware extradition statute. If the Delaware authorities have complied with its terms, relator has not been denied the due process of law that the federal Constitution secures. In considering the Delaware statute, I would follow the rule of construction that the Supreme Court has used when construing article 4, section 2, clause 2, of the Constitution and the federal interstate extradition statute, namely that 'they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose * * *.' Biddinger v. Com'r, 245 U.S. 128, 133, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917).[19] And, as noted above, the purpose of extradition statutes is to assure speedy rendition of fugitives.[20]
 
 
 20
 The Delaware extradition statute which governs the form of demand, 11 Del.Code Ann. 2503, was derived from section 3 of the Uniform Criminal Extradition Act. It provides in relevant part:
 
 
 21
 No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing * * * and accompanied (1) by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, (2) or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; (3) or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, * * *. The indictment, information, or affidavit made before the magistrate shall substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence shall be authenticated by the Executive Authority making the demand.[21]
 
 
 22
 The Delaware extradition statute has three major clauses, each of which specifies alternative documents that may accompany an extradition demand. The first clause, which is controlling in this case, provides that the extradition demand may be accompanied 'by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime.' This clause does not require that the affidavit supporting the information be made 'before a magistrate.' In contrast, the second clause of the Delaware statute, not applicable to the facts of this case, provides that the extradition demand may be accompanied 'by a copy of an affidavit made before a magistrate * * *, together with a copy of any warrant which was issued thereupon.' It thus appears that under the Delaware extradition statute affidavits need be made 'before a magistrate' only when such an affidavit and a warrant issued thereupon form the basis for an extradition demand, and not when an information forms the basis of an extradition demand. I therefore reject relator's contention that the supplemental affidavits are insufficient to permit extradition on the ground that they were not made 'before a magistrate.'
 
 
 23
 Like the federal interstate extradition statute, the Delaware extradition statute requires that the extradition demand be authenticated. Specifically, the Delaware statute requires that 'the copy of indictment, information, affidavit, judgment of conviction or sentence shall be authenticated by the Executive Authority making the demand.' In this case, the information and the original affidavit were certified as authentic by the Governor of Louisiana, but the supplemental affidavits were not so authenticated. Applying the liberal principles of construction referred to above to the Delaware statute. I do not believe that the Delaware statute requires anything more in the circumstances of this case than that the information be authenticated by the Executive Authority of Louisiana. The three main clauses of the Delaware statute permit extradition when any of five different types of documents accompany the extradition demand. The first clause permits either of two documents, 'an indictment found or (an) information supported by affidavit.' The second clause permits 'an affidavit made before a magistrate * * * together with a copy of any warrant * * * issued thereupon.' And the third clause permits either of two documents, 'a judgment of conviction or of a sentence.' Parallel to these five provisions, the authentication clause requires authentication of the '(1) indictment, (2) information, (3) affidavit, (4) judgment of conviction or (5) sentence.' It is clear that the authentication clause does not require executive authentication of all documents forwarded by the demanding state, for there is no mention of the warrant required if the extradition demand is governed by the second clause. Likewise, it appears that the authentication clause requires authentication of the information alone when the extradition demand is governed by the first clause, for there is no mention of supporting affidavits. The 'affidavit' in the authentication clause refers to the affidavit permitted when the extradition demand is governed by the second clause, for to hold otherwise would mean that extradition demands governed by the second clause would require no authentication whatsoever. But it does not follow necessarily that 'affidavit' in the authentication clause refers to the supporting affidavit permitted when the extradition demand is governed by the first clause. I thus conclude that the Delaware extradition statute, liberally construed, requires executive authentication of only the primary documents supporting the extradition demand, and does not require executive authentication of supporting documents. This construction is consonant with the purpose of the authentication clause, for executive authentication serves only to assure that the extradition demand is an authentic demand of the demanding state, and does not purport to authenticate the contents of the extradition papers as true. I think that this assurance sought by the authenication clause is satisfied when the information alone is authenticated. I therefore reject relator's contention that the supplemental affidavits are insufficient to permit extradition on the ground that they are not certified as authentic by the Governor of Louisiana.
 
 
 24
 I would not, however, affirm the district court's denial of relief on this record. Since I believe that the Governor's arrest warrant should be held invalid, on the ground that the affidavit supporting it is insufficient to establish probable cause, i would remand this case to the district court with instructions to order relator discharged after 30 days if the Governor of Delaware should not within that time issue a new Governor's arrest warrant[22] based upon the supplemental affidavits. I would hold here only that the supplemental affidavits are sufficient to support a Governor's arrest warrant, and that Delaware may lawfully extradite relator pursuant to these supplemental affidavits. But the determination of whether an arrest warrant should issue on the basis of these affidavits is a determination that should be made in the first instance by the Governor of Delaware. The entire scheme of extradition statutes contemplates that the Governor of the asylum state shall make the initial determination on whether an arrest warrant will issue.[23] Remanding this case for possible further action by the Governor of Delaware, who has not had an opportunity to consider the present record, would have an additional virtue in this case. If I have incorrectly construed the requirements of the authentication, clause of the Delaware extradition statute, I am confident that the Governor of Delaware would require additional authentication before ordering the extradition of relator.
 
 
 25
 I would not consider the merits of relator's claim that rights guaranteed him by the sixth amendment have been denied him by reason of Louisiana's alleged dilatory tactics in delaying commencement of extradition proceedings, for the record demonstrates that relator has not exhausted presently available Louisiana remedies on this claim.[24] Also, I believe that relator's equal protection claim is without merit.[25]
 
 
 
 [1]
 The Delaware Superior Court found the affidavit accompanying the demand for extradition insufficient to establish probable cause and thus insufficient to justify arrest or extradition. The court, rather than ordering appellant's release, however, permitted the Louisiana authorities additional time to supplement the record. Grano v. State, 257 A.2d 768 (Del.Super.1969). On the basis of the supplemental affidavits the court held that probable cause was established. The Delaware Supreme Court affirmed. Grano v. State, (1969); Ker v. California, 374 U.S. 23, July 6, 1970 (per curiam)
 
 
 [2]
 9 LSA RS 14:62 provides:
 Simple Burglary.
 Simple burglary is the unabuthorized entering of any vehicle, water craft, dwelling or other structure, movable or immovable, with the intent to commit any forcible felony or any theft therein, other than as set forth in Article 60 (aggravated burglary).
 Whoever commits the crime of simple burglary shall be imprisoned at hard labor for not more than nine ywars.
 
 
 [1]
 Where the extradition demand is accompanied by an information, as in this case, or by an affidavit made before a magistrate, there is no assurance that probable cause exists unless it is spelled out in an affidavit. Kirkland v. Preston, 128 U.S.App.D.C. 148, 385 F.2d 670, 676 (1967); see Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958)
 
 
 [2]
 See Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 21 L.Ed. 637 (1969) ; Ker v. California, 374 U.S. 23, 35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Brinegar v. United States, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 161-162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); cf. Fed.R.Crim.P. 4(a)
 
 
 [3]
 See note 1 supra
 
 
 [4]
 See Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958)
 
 
 [5]
 See Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (March 29, 1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 22 L.Ed.2d 1503 (1958)
 
 
 [6]
 The complaint in Giordenello stated in relevant part:
 The undersigned complainant (Finley) being duly sworn states: That on or about January 26, 1956, at Houston, Texas in the Southern District of Texas, Veto Giordenello did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation; in violation of Section 174, Title 21, United States Code.
 And the complainant further states that he believes that ---------- are material witnesses in relation to this charge.
 357 U.S. at 481, 78 S.Ct. at 1247.
 
 
 [7]
 The Court in Giordenello elaborated why the complaint in that case was insufficient to support a finding of probable cause:
 The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made. We think these deficiencies could not be cured by the Commissioner's reliance upon a presumption that the complaint was made on the personal knowledge of the complaining officer. The insubstantiality of such an argument is illustrated by the facts of this very case, for (the complaining officer's) testimony at the suppression hearing clearly showed that he had no personal knowledge of the matters on which his charge was based.
 357 U.S. at 486, 78 S.Ct. at 1250.
 Precisely the same deficiencies are present in the instant case. After a factual inquiry, the Delaware Superior Court found:
 The difficulty is that the conclusionary statements to the fact that a burglary was committed are obviously based on information only and no source or detail as to such facts is supplied. If there be any doubt that the information is second hand, the testimony of the New Orleans policeman in this hearing, which shows he did not arrive at the scene until two days after the alleged crime, eliminates such doubt.
 
 
 [257]
 A.2d at 776
 
 
 [8]
 Recent decisions of the Court make clear that the affidavit must recite the underlying circumstances that support its factual conclusions, as well as those which support its legal conclusions. See Spinelli v. United States, 393 U.S. 410, 413, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)
 
 
 [9]
 See note 2 to the majority opinion
 
 
 [10]
 357 U.S. at 486-487, 78 S.Ct. at 1250
 
 
 [11]
 See Grano v. State, 257 A.2d 768, 772-777 (Del.Super.1969)
 
 
 [12]
 The federal interstate extradition statute, 18 U.S.C. 3182 (1964), provides in relevant part:
 Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured * * * shall cause the fugitive to be delivered * * *.
 This statute implements article 4, section 2, clause, 2, of the Constitution, which provides:
 A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
 
 
 [13]
 See also State v. Booth, 134 Mont. 235, 328 P.2d 1104, 1109 (Mont.1958); Woods v. State, 264 Ala. 315, 87 So.2d 633, 638 (1956); Gulley v. Apple, 213 Ark. 350, 210 S.W.2d 514, 519 (1948); Videan v. State, 68 Idaho 269, 194 P.2d 615, 617 (1948); In re Morgan, 244 Cal.App.2d 903, 53 Cal.Rptr. 642 (1966)
 
 
 [14]
 Lascelles v. Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 548 (1893); Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885); Commonwealth of Kentucky v. Dennison, 65 U.S. (24 How.) 66, 16 L.Ed. 717 (1860); United States ex rel. Vitiello v. Flood, 374 F.2d 554 (2d Cir. 1967); Smith v. Idaho, 373 F.2d 149, 154 (9th Cir. 1967)
 
 
 [15]
 See New York v. O'Neill, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959); Innes v. Tobin, 240 U.S. 127, 134-135, 36 S.Ct. 290, 60 L.Ed. 562 (1916); People ex rel. Brenner v. Sain, 29 Ill.2d 239, 193 N.E.2d 767 (1963); and cases cited in note 13 supra
 
 
 [16]
 See Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114 (1952); Biddinger v. Com'r, 245 U.S. 128, 38 S.Ct. 41 (1917); Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906); United States ex rel. Vitiello v. Flood, 374 F.2d 554 (2d Cir. 1967)
 
 
 [17]
 See note 12 supra
 
 
 [18]
 See New York v. O'Neill, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959)
 
 
 [19]
 See also Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906); Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885); Note, Extradition Habeas Corpus, 74 Yale L.J. 78, 91-92 (1964)
 
 
 [20]
 Relator denies that he committed the burglary charged by Louisiana, but he does not claim that he is not the person sought by Louisiana
 
 
 [21]
 I have supplied the numbers (1), (2), and (3) to facilitate references to this statute
 
 
 [22]
 See 11 Del.Code Ann. 2521
 
 
 [23]
 See Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906); Commonwealth of Kentucky v. Dennison, 65 U.S. (24 How.) 66, 16 L.Ed. 717 (1860); Comment Interstate Rendition: Executive Practices and the Effects of Discretion, 66 Yale L.J. 97 (1956)
 
 
 [24]
 See 28 U.S.C. 2254(b)-(c) (Supp. IV, 1969); Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114 (1952); United States ex rel. Jennings v. Pennsylvania, 429 F.2d 522, 523 (3d Cir. 1970); Developments in the Law-- Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1097 n. 21 (1970). See generally, Note, Extradition Habeas Corpus, 74 Yale L.J. 78, 84-87 (1964). The facts supporting this claim are set out fully in Grano v. State, 257 A.2d 768 (Del.Super.1969)
 
 
 [25]
 Relator contends that the refusal of the Delaware courts to appoint a fingerprint expert, which he was unable to afford, to assist him in demonstrating that he was not a fugitive from Louisiana was a denial of the equal protection of the laws guaranteed him by the Fourteenth Amendment. In the Delaware habeas corpus proceeding, the most that an expert would have been able to do in aid of relator was to testify that, contrary to the recitations of the Louisiana affidavit, the fingerprint used for identification was not lifted from a metal box and/or the fingerprint was not that of relator. As the district court correctly noted, such expert testimony would have merely created a conflict in the evidence. The burden is on the petitioner in a state extradition habeas corpus proceeding to show beyond a reasonable doubt that he was not in the demanding state at the time of the commission of the alleged offense, and a mere conflict in the evidence is not sufficient to warrant discharge from custody. See South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933); Lee Won Sing v. Cottone, 74 App.D.C. 374, 123 F.2d 169 (1941); Note, Extradition Habeas Corpus, 74 Yale L.J. 78, 92-93 (1964). Accordingly, under the circumstances of this case, I do not believe that the Delaware courts erred in refusing to appoint a fingerprint expert, for such an appointment would have been a futile gesture